UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA HAGSTROM,

     Plaintiff,

v.                               Case No:     8:15-cv-631-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Sandra Hagstrom, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case.  42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the

use of a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

Only after the Commissioner meets this burden does the burden shift back to the claimant to show

that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty*

*v. Apfel*, 245 F.3d at 1278 n.2.

### C.  Procedural History

Plaintiff protectively filed an application for DIB on November 9, 2011, alleging disability

beginning August 20, 2010.  (Tr. 130-36).  Plaintiff's application was denied initially on February

1, 2012, and upon reconsideration on February 29, 2012.  (Tr. 92-96, 99-103).  Plaintiff requested

a hearing and, on June 28, 2013, a hearing was held before Administrative Law Judge Benjamin

F. Parks (the "ALJ").  (Tr. 40-65).  On September 4, 2013, the ALJ entered an unfavorable

decision.  (Tr. 24-37).  Plaintiff requested review of the ALJ's decision and the Appeals Council

denied review on January 15, 2015.  (Tr. 1-4).  Plaintiff initiated the instant action by Complaint

(Doc. 1) filed on March 20, 2015.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since August 30, 2010, the alleged onset date.  (Tr. 26).  At step two,

the ALJ found that Plaintiff has the following severe impairments:  post surgery for tumor removal

in brain and double vision with possible memory loss.  (Tr. 26).  At step three, the ALJ determined

that Plaintiff did not have an impairment or combination of impairments that meets or medically

equals the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(Tr. 26).

Before proceeding to step four, the ALJ determined that Plaintiff has the residual functional

capacity ("RFC") to

perform light work as defined in 20 CFR 404.1567(b) except with no foot pedals or uneven surfaces and no hazardous machinery; mild limitations in activities of daily living, meaning can take care of one's self as to food, shelter and hygiene; mild limitations in social functioning so that they can act appropriately with co-workers, supervisors and general public; mild to moderate limitations in concentration, persistence and pace so that they have difficulty with detailed and complex instructions up to 40 to 50 percent in an 8-hour workday, but can do simple and repetitive tasks (steps 1-2-3 and SVP 1-2 entry level type jobs) and maintain the required production rate, persistence and pace and required work schedule for those type of entry level jobs with the normal scheduled breaks during an 8-hour day.

(Tr. 27).  At step four, the ALJ found that Plaintiff is unable to return to her past relevant work as an administrative assistant. (Tr. 31).

At step five, the ALJ relied on the testimony of a VE and found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically, such occupations as housekeeper, laundry worker, and folder.  (Tr. 32).  The ALJ concluded that Plaintiff was not under a disability since August 30, 2010, through the date of the decision.  (Tr. 32).

## II.    Analysis

Plaintiff raises two issues on appeal:  (1) whether new and material evidence submitted to the Appeals Council warrants remand; and (2) whether substantial evidence supports the ALJ's RFC determination.  The Court will address each issue in turn.

### A)  Whether new and material evidence submitted to the Appeals Council warrants remand.

After the ALJ's decision was issued on September 4, 2013, Plaintiff's counsel submitted to the Appeals Council treatment records from Plaintiff's visits to Valeria Perruci, M.D., dated September 12, 2013, and October 15, 2013.  In addition, Plaintiff's counsel submitted a Neuro-Ophthalmology Evaluation and MRI dated October 15, 2013, from James A. Rush, M.D.

Plaintiff's counsel also submitted notes from Plaintiff's follow up with Dr. Rush dated November 5, 2013. (Tr. 4,5). The Appeals Council acknowledged receipt of this evidence, considered it, but concluded that it "does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2, 4).

Plaintiff argues that the newly submitted records from Dr. Perucci and Dr. Rush is material and that there is a reasonable possibility that this evidence will change the administrative outcome. (Doc. 24 p. 9-11). Specifically, Plaintiff notes that the records from Dr. Perucci reveal a new diagnosis of severe depression as well as document continued complaints of memory problems, double vision and balance problems. (Doc. 24 p. 9). The records from Dr. Rush indicate that Plaintiff will have to pay for an MRI with cash "owing to her loss of insurance," which Plaintiff argues is important in light of the ALJ's reasons for rejecting Plaintiff's subjective complaints and credibility. (Doc. 24 p. 9). Plaintiff contends that while these records were generated after the ALJ's decision, they are chronologically relevant and applicable to Plaintiff's condition before the ALJ's decision. (Doc. 24 p. 11).

In response, Defendant argues that the ALJ's decision is supported by substantial evidence, even when considering the evidence submitted by Plaintiff to the Appeals Council. (Doc. 28 p. 14). Defendant argues that Plaintiff's diagnosis of depression by Dr. Perucci is not chronologically relevant and that Dr. Rush's note that Plaintiff lost her insurance does not undermine the ALJ's decision. (Doc. 28 p. 13-14).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. "The Appeals Council must consider new, material evidence, and chronologically

relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (citing 20 C.F.R. §§ 404.970(b)).  New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision.  *See Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In this case, the Court finds that the evidence submitted by Plaintiff to the Appeals Council does not warrant remand.  First, as to the diagnosis of depression from Dr. Perucci, the Court agrees with Defendant that Plaintiff has failed to show that this evidence was chronologically relevant to the period considered by the ALJ.  Dr. Perucci, who examined Plaintiff after the ALJ's decision was entered, did not state any duration for Plaintiff's depression symptoms, and thus has presented no evidence that Plaintiff's diagnoses relates to the period of time on or before the ALJ's decision.  The record indicates that prior to the ALJ's decision Plaintiff was noted on multiple occasions to have no depressive symptoms.  (Tr. 331, 347, 360).  Plaintiff has failed to show that this new evidence, documenting a new diagnoses of depression, would change the administrative outcome.

Furthermore, Dr. Rush's October 2013 observation that Plaintiff would have to pay for an MRI with cash "owing to her loss of insurance" would not change the administrative outcome reached by the ALJ.  Dr. Rush's note does not indicate when Plaintiff lost her insurance and does not explain Plaintiff's failure to seek additional treatment for her conditions between the alleged onset date of August 30, 2010, and the ALJ's decision on September 4, 2013.  Plaintiff made no

mention at the administrative hearing of difficulty receiving treatment due to an inability to pay and Plaintiff fails to point to anywhere else in the record where Plaintiff complains of such an inability.

Finally, the Court notes that while Plaintiff argues the notes from Dr. Perucci and Dr. Rush document Plaintiff's ongoing difficulties with balance and double vision, Plaintiff has failed to show that this documentation would alter the administrative outcome.  As Plaintiff has failed to make such a showing, the Court does not find it appropriate to remand this case to have the ALJ reevaluate the medical record as a whole.

**B)  Whether substantial evidence supports the ALJ's RFC determination.**

Plaintiff argues that the ALJ by concluding that Plaintiff, a 50-53 year old woman with well documented double vision and balance problems, could perform the standing requirements of light work which requires standing and walking for 6 hours a day.  (Doc. 24 p. 12).  Plaintiff contends that the ALJ did not find Plaintiff's balance and vision issues to be severe impairments and, therefore, failed to consider them at all.  (Doc. 24 p. 12).  Further, Plaintiff notes that no treating or examining source opined that Plaintiff could perform light work.  (Doc. 24 p. 14).

Defendant responds that the ALJ properly weighed the evidence, including treatment records, medical opinions, and Plaintiff's daily activities, and his finding that Plaintiff remained capable of light work is supported by substantial evidence.  (Doc. 28 p. 4).  Defendant argues that the ALJ found that double vision and possible memory loss were severe impairments and specifically discussed them in his decision.  (Doc. 28 p. 7).  In addition, Defendant argues that while the ALJ did not find Plaintiff's balance issues to be a severe impairment, he discussed them at length.  (Doc. 28 p. 7).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).  In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record.  *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Further, in order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that he became disabled on or prior to the expiration of his insured status.  *See* 20 C.F.R. §§ 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that a claimant must prove he was disabled on or before the date last insured for DIB).

As noted above, "[s]ubstantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Crawford*, 363 F.3d at 1158.  Even if the evidence preponderates against the Commissioner's findings, the Court must still affirm if the decision reached is supported by substantial evidence.  *Id.*  Thus, the Court will affirm the ALJ's RFC determination so long as it is supported by such relevant evidence that a reasonable person would accept as adequate to support for his determination.

Here, upon review of the ALJ's decision, the Court finds that the ALJ's RFC determination is supported by substantial evidence.  As to Plaintiff's vision issues, in September 2010, shortly after Plaintiff's alleged onset date, Plaintiff's eye exam was essentially normal.  (Tr. 301).  Plaintiff

reported that she experienced double vision only "very rarely." (Tr. 301). In May 2011, Plaintiff was seen at the Health Sciences center Medical Clinic and reported that she had recently begun experiencing double vision when she was tired, especially in the evening. (Tr. 310). Plaintiff stated that "once in a while she has difficulty in ambulation where she feels like she could not balance herself in the form of tripping and leaning to the right." (Tr. 310). On examination she had no double vision, had normal coordination, and had no difficulty in her gait, although she did have difficulty in her tandem gait. (Tr. 311). The examining physician found that Plaintiff was "quite stable," and indicated that Plaintiff did not need to return for three years. (Tr. 311). In his decision, the ALJ noted in his opinion, if Plaintiff's physician believed her symptoms were significant, he would have advised her to return sooner. (Tr. 29).

The ALJ noted that in December 2011, a consultative examiner, Dr. Hector Guevara, noted that Plaintiff could walk 10 blocks without a problem, sit for hours, hear, speak, understand, and do work-related mental activities normally and her concentration and social interaction appeared normal as well. (Tr. 29, 329). Further, the ALJ noted that the consultative examiner plaintiff had only "mild" imbalance with ambulation and concluded that there was no clear cause for Plaintiff's imbalance problems. (Tr. 29, 332).

The ALJ also noted that Plaintiff's examination by Dr. Luis Figueroa in April 2012, showed no major problems neurologically or otherwise. (Tr. 29, 429-31). The ALJ noted that Dr. Figueroa could not determine a physical cause for Plaintiff's alleged balance problems and double vision. (Tr. 29). The ALJ noted that Plaintiff was referred for participation in a formal balance therapy program but that there was no indication in the record Plaintiff sought balance therapy or any other rehabilitation therapy. (Tr. 29). While Plaintiff contends that she could not afford treatment, there is no indication in the record, prior to the comment by Dr. Rush as discussed

above, that Plaintiff could not afford treatment. As Defendant notes, at the hearing Plaintiff did not testify that she could not afford treatment, but did not pursue additional treatment because none was recommended by her doctors. (Tr. 59-60).

The ALJ also noted in his decision Dr. Young's Psychological Evaluation of Plaintiff in January 2012. The ALJ noted that while Plaintiff's testing indicated serious impairments, Dr. Young concluded that Plaintiff's behavior during testing and the resulting indications of impairment appeared "potentially exaggerated" and that Plaintiff did not have any psychiatric symptoms. (Tr. 348). The ALJ found that Dr. Young's findings greatly diminished Plaintiff's credibility. (Tr. 29).

Finally, the ALJ noted that none of the treating and examining physicians have ever indicated that Plaintiff could not work and they placed no functional limitations on Plaintiff. (Tr. 29). In January 2012, a state agency psychologist opined that Plaintiff's mental limitations were not severe, and noted that the medical records appeared to indicate malingering. (Tr. 69-71). In February 2012, another state agency psychologist opined that Plaintiff's mental limitations were severe, but concluded that they did not significantly interfere with usual, simple routine tasks, and that Plaintiff could engage in non-detailed, non-complex work activities. (Tr. 83). As to Plaintiff's physical impairments, the state agency physician opined that Plaintiff had no exertional or non-exertional limitations as a result of her physical impairments. (Tr. 81).

The ALJ's RFC determination was supported by such evidence as a reasonable person would accept as adequate his conclusion. Accordingly, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

### III.     Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties